A. S. RHODES, Appellant, v. FARMERS STATE BANK, CATHAY, NORTH DAKOTA, a Corporation, Respondent.

(226 N. W. 943.)

Opinion filed August 21, 1929. Rehearing denied October 22, 1929.

652

*Lemke & Weaver*, for appellant.

*A. V. Zuber*, for respondent.

CHRISTIANSON, J. This is an action to cancel certain chattel mortgages executed by the plaintiff to the defendant on the ground that the mortgages were executed under duress. The trial court made findings and ordered judgment in favor of the defendant and plaintiff has appealed.

The facts necessary to an understanding of the issues involved are as follows: On April 29, 1927, the defendant bank obtained a judgment against the plaintiff, A. S. Rhodes, in the district court of Wells county for $5,410.80. Execution was issued upon the judgment and on September 7, 1927, the sheriff of Wells county made a levy thereunder on certain grain then in shock belonging to Rhodes. Rhodes later threshed the grain. The sheriff was notified by the bank that Rhodes had threshed the grain, and on September 20, 1927, he sent a deputy, who, together with assistants having a truck, went upon the

premises where the grain was stored for the purpose of hauling the grain to town. The plaintiff met these parties and some conversation was had between them. The plaintiff claims that he did not know that any of the persons who came for the grain was a deputy sheriff and that he told them that he could haul his own grain. The deputy sheriff and the persons assisting him testified that the plaintiff refused to permit them to haul the grain at all, and threatened to do violence to anyone who attempted to do so. The parties reported to the sheriff that the plaintiff had refused to permit them to take the grain; and on the afternoon of the same day the sheriff, accompanied by the attorney for the judgment creditor, a deputy sheriff and two men with a truck and shovels, went out to take possession of the grain. While they were loading the grain the plaintiff came upon the scene. There is a square conflict in the evidence as to what occurred after his arrival, but all parties agree that there was an altercation between the plaintiff and the sheriff. According to the testimony of the sheriff, his deputy, the attorney for the judgment creditor, and the two men who accompanied them, the plaintiff was the aggressor and not only threatened but attempted to do violence to the sheriff and the men who were loading the grain. But, according to the testimony of the plaintiff and his nephew who accompanied him, and two members of the threshing crew who were nearby, the plaintiff was not the aggressor. The result of the trouble was that the sheriff placed the plaintiff under arrest and handcuffed him; that thereafter plaintiff was placed in the car driven by the sheriff and the sheriff thereupon drove into the town of Cathay. There the attorney for the bank, who had also been riding in the car, went into the bank and shortly thereafter the sheriff and plaintiff also entered the bank. There is a conflict in the evidence as to what was said and done both before and after the plaintiff entered the bank. He claims that the sheriff stated to him that unless he (plaintiff) went into the bank and made settlement that he (sheriff) would prefer charges against him (plaintiff) for resisting an officer and that the sheriff took plaintiff into the bank without any request on his part. The sheriff, however, testified that after the attorney for the bank had gone into the bank, the plaintiff stated that he also wanted to go in and see the officers of the bank; that thereupon the sheriff took him in, and, after obtaining plaintiff's promise that he

would resort to no further violence, the sheriff removed the handcuffs. After the plaintiff had entered the bank a settlement was made between him and the officers of the bank whereby the bank agreed to release its judgment and the levy made under the execution upon payment of $1,000 in two equal annual installments; to wit:—$500 to be paid in the fall of 1927 and $500 to be paid in the fall of 1928. Promissory notes were executed in these sums and chattel mortgages were also executed to secure the notes. The $500 note payable in the fall of 1927 was secured upon the grain which had been levied upon under the execution, and the $500 payable in the fall of 1928 was secured by chattel mortgage upon crops to be produced in 1928. Plaintiff claims that his apparent consent to these mortgages was not real or free but was obtained through duress and menace, that is, through "threats of criminal prosecution" and that, consequently, they are voidable and may be rescinded at his option.

The evidence shows that in addition to the notes and chattel mortgage there was prepared in the bank a written agreement outlining the arrangement between the parties and that this agreement provided that the bank should satisfy its judgment and cause the levy made under the execution to be released. The undisputed evidence further shows that the bank complied with this agreement.

There were present in the bank at the time the instruments were executed, in addition to the plaintiff, the sheriff, the attorney for the bank and two or three officers or employees of the bank. According to the testimony of all these parties there were no threats made to the plaintiff by any one, and the attorney for the bank stated to the plaintiff at least twice that he was not required to sign the instruments unless he desired to do so and that in fact he (the attorney) preferred that the instruments be not executed then for fear that the plaintiff might subsequently claim that he had been coerced into executing them. The plaintiff, however, claims that the sheriff repeatedly told him that unless he executed the instruments that he would "prefer charges" against him for unlawfully resisting an officer; and that he executed the instruments because of the threats of such criminal prosecution.

As said, the mortgages were executed September 20, 1927. This action was instituted October 24, 1927. At the same time the plaintiff instituted another action against the sheriff, the attorney for the

bank and the deputy sheriff for damages claimed to have been sustained by reason of the alleged unlawful assault and arrest. The action for damages was tried to a jury and resulted in a verdict in favor of the defendants. At the close of (or during) the trial of the action for damages, counsel for the respective parties stipulated that the evidence in that action should constitute the evidence in this case; and that the court should consider such evidence as though it were introduced directly in this case, together with certain exhibits; namely, the notes and mortgages in suit and the judgment-roll in the action upon which the execution had issued. So the record on this appeal consists of a transcript of the evidence taken upon the trial of the action for damages and of the aforesaid exhibits.

As said, this case was submitted to the same trial judge who presided in the damage suit. He found that the mortgages were valid contracts, and "that the defendant bank neither used, employed or exerted any violence upon the body of the plaintiff or terrified, frightened or threatened him in any way."

A careful consideration of all the evidence leads us to the same conclusion as that reached by the trial court. The plaintiff, of course, had the burden of proof. 9 R. C. L. p. 731. That is, he had the burden of showing that his consent to the transaction which he seeks to avoid was actually coerced. 3 Williston, Contr. p. 2831. The plaintiff has failed to sustain the burden. As we view it, the evidence considered as a whole preponderates not in his favor but against him. Upon the crucial question, whether the consent of the plaintiff was free and real or was coerced, there was a conflict in the testimony of witnesses who appeared and testified in person. The trial court who saw these witnesses and heard their stories as they fell from their lips believed the version of the witnesses for the defendant rather than that of the plaintiff and his witnesses. This finding as to credibility is entitled to appreciable weight; but even as disclosed by the cold paper record, the evidence in the case, in our opinion, preponderates in favor of the defendant. We are agreed that the judgment appealed from is right and should be affirmed. It is so ordered.

BURKE, Ch. J., and BIRDZELL and NUESSLE, JJ., concur.

BURR, J. (dissenting): After the sheriff had made a levy on plaintiff's grain, he sent some men, strangers to the plaintiff, to shovel the grain into a truck. The plaintiff, noticing some people at his grain, hurried there, jumped on to the hub of the wheel to look into the truck, he is seized by the sheriff and others, thrown to the ground, a fight ensues, plaintiff is hit on the head with a "black-jack" in the hands of the sheriff—one says: "tapped;" another says: "stunned"—he gets the "black-jack" away from the sheriff; three members of the threshing crew saw the "fracas;" one of the crew says: "the sheriff put his foot on his neck and kept him down and his face was in the stubble on the ground and I thought probably he would take his ear off, the way it looked;" two of the threshing crew say plaintiff's face was stamped into the ground, others give a different version but his face was bloody and dirty and his ear was about off,—all who saw say it was bleeding— two of the threshing crew protest against the treatment he is receiving, one saying: "why don't you go to work and arrest the man, don't abuse him like a dog;" after three "rounds" he is arrested, handcuffed and put into a car; instead of taking him to jail at the county-seat he is taken to the bank for whom the sheriff had the execution and for whom the sheriff was working; the sheriff says this was at plaintiff's request; plaintiff denies this and says the sheriff said to him: "now be a good Indian" and "now if you will sign up the papers for this bank we will let you go." It is true there is a conflict of testimony. The sheriff says plaintiff interfered with him, forced a fight and what was done was necessary to make the levy. The calm and fair statement of fact, so far as there is a statement in the majority opinion, does not give a picture of what took place. Space does not permit. The frame of mind in which the plaintiff was, whether it was his fault or not, was not conducive to deliberateness. He is taken down a sidestreet and into the bank by the back door, still manacled, and for some time, at least while negotiations are going on, he remains handcuffed—he says half an hour, others say a few minutes. The sheriff says all this was at plaintiff's request, and to avoid "parading" him. He signs the two chattel mortgages whereby the creditor gets good security for part of the debt represented by a judgment of doubtful value after plaintiff gets his exemptions. After being released he is taken home and shortly thereafter brings this action to set aside the

mortgages. It is true when he sued the sheriff the jury found against him but the jury knew he had this suit against the bank also. The trial court says he gave these chattel mortgages freely, wilfully, and without duress on the part of the bank and its agents. Because I do not believe this, I dissent.